STAY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCA HYGIENE PRODUCTS AKTIEBOLAG ("AB") AND SCA TISSUE NORTH AMERICA, LLC, | Case No. CV 17-04395-AB (JPRx) |
| Plaintiffs, | **[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION TO STAY AND DENYING PLAINTIFFS' MOTION TO DISMISS TARZANA'S COUNTERCLAIM** |
| v. | |
| TARZANA ENTERPRISES, LLC, | |
| Defendant. | |

## I.  INTRODUCTION

Plaintiffs SCA Hygiene Products Aktiebolag ("AB") and SCA Tissue North America, LLC ("Plaintiffs" or "SCA") bring the instant patent infringement suit against Defendant Tarzana Enterprises, LLC ("Defendant" or "Tarzana").  Currently pending before the Court are Defendant's Motion to Stay, (Dkt. No. 61), and Plaintiffs' Motion to Dismiss Defendant's Counterclaim for Conspiracy to Defraud, (Dkt. No. 34).  Both parties filed oppositions, (Dkt. Nos. 44, 74), and replies, (Dkt. Nos. 48, 78).  After consideration of the papers filed in support of and in opposition to the instant Motions, the Court deems these matters appropriate for decision without oral argument of counsel and **VACATES** the hearing set for September 29, 2017.  *See*

1.

Fed. R. Civ. P. 78; C.D. Cal. L.R. 7–15.  For the reasons discussed below, the Court **GRANTS** Defendant's Motion to Stay and **DENIES** Plaintiffs' Motion to Dismiss.

## II.   BACKGROUND

SCA is "a leader in the paper goods industry" that provides commercial paper-based products for a variety of uses.  (Dkt. No. 1 ("Compl.") ¶ 4.)  Tarzana is small company that sells a napkin product called Elegance OneNap ("OneNap").  (Declaration of Jonathan Pearson in Support of Tarzana Enterprises, LLC's Motion to Stay ("Pearson Decl.") ¶¶ 2-3.)  SCA owns U.S. Patent Nos. 8,597,761 ("761 patent") and 9,320,372 ("372 patent").  (Compl. ¶¶ 14, 18.)  SCA alleges Tarzana's OneNap product infringes the 761 and 372 patents.  (*Id.* ¶¶ 21-59, 61-95.)

Tarzana began selling OneNap in July of 2010.  (*See* Dkt. No. 23 ("Counterclaims") ¶ 18.)  Prior to this litigation, in April 2011, SCA sued Tarzana alleging OneNap infringed two other SCA patents, U.S. Patent Nos. 7,611,765 ("765 patent") and 7,939,159 ("159 patent").  (*See* Counterclaims ¶¶ 22, 65; Pearson Decl. ¶ 6.)  The 765 and 159 patents "claim interleaved napkins wherein at least the first of the two folds of the napkin . . . is an 'equal' fold (i.e., a fold 'bisecting the napkin into two equal parts')."  (Counterclaims ¶ 24.)  At the time of that litigation, the fold of Tarzana's OneNap was offset 3/16 of an inch.  (*Id.* ¶ 28; Pearson Decl. ¶ 6.)  SCA argued its patents covered napkins where the first fold is offset.  (Counterclaims ¶¶ 31-36.)   The parties entered into a settlement agreement ("2012 Agreement") on April 10, 2012, wherein Tarzana agreed to increase OneNap's first-fold offset from 3/16 of an inch to one half inch.  (*See* Counterclaims ¶ 65; Dkt. No. 23-5 ¶ 2.1.)

On October 29, 2010, SCA filed a patent application that resulted in the issuing of patents 761 and 372.  (Counterclaims ¶ 38.)  Tarzana claims SCA did not disclose this filing during the previous litigation, and had it done so, Tarzana would not have entered into the 2012 Agreement.  (*Id.* ¶¶ 57, 65, 68.)

When Tarzana originally filed the instant Motion to Stay, it had yet to file petitions for *inter partes* review ("IPR") of the 761 and 372 patents.  (*See* Tarzana's

2.

Motion to Stay ("Mot. to Stay") at 14.)  However, Tarzana has since filed IPR applications for both patents.  (*See* Dkt. Nos. 120, 121.)  Tarzana asks that the Court stay the case pending the Patent Office's decision of whether or not to institute review of the 761 and 372 patents.[1]  (*See* Mot. to Stay at 25.)

In its Motion to Dismiss Tarzana's Counterclaim for Conspiracy to Defraud ("Motion to Dismiss Counterclaim"), SCA argues the counterclaim (claim one) is barred by both the 2012 Settlement Agreement and the economic loss doctrine, and also fails to meet Rule 9(b)'s pleading requirements for fraud.  (Dkt. No. 34 ("Mot. to Dismiss Counterclaim") at 2-3.)

## III.    LEGAL STANDARD

### A. Motion to Stay

"A district court has the inherent power to stay its proceedings.  This power to stay is 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  A district court's inherent power to control its docket "includes the authority to order a stay pending the outcome of reexamination proceedings in the PTO."  *Guthy–Renker Fitness L.L.C. v. Icon Health & Fitness Inc.*, No. CV 97–7681 LGB (EX), 1998 WL 670240, at *2 (C.D. Cal. July 17, 1998).  Under these circumstances, a court's discretion is guided by: "(1) the stage and history of the litigation; (2) whether a stay would simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party."  *Asetek Holdings, Inc.*

---

[1] Although Defendant's original request for a 30-day stay to prepare and file its IPR petitions is now moot, Defendant also requested "the stay continue until the Patent Office issues a decision whether to institute IPR."  (Mot. to Stay at 25.)  Further, if IPR is instituted, Defendant asks the stay be continued until "a final written decision is issued by the Patent Office."  (*Id.*)

*v. Cooler Master Co.*, No. 13–cv–00457–JST, 2014 WL 1350813, at *5 (N.D. Cal. Apr. 13, 2014). While these three considerations are important, ultimately, "the totality of the circumstances governs." *Allergan Inc. v. Cayman Chem. Co.*, No. SACV 07-01316 JVS (RNBx), 2009 WL 8591844, at *2 (C.D. Cal. Apr. 9, 2009).

"There is a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings." *Guthy–Renker Fitness*, 1998 WL 670240, at *2 (quoting *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)). Moreover, a district court's order staying an infringement suit pending reexamination proceedings is not appealable. *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983). Still, a "court is under no obligation to delay its own proceedings by yielding to ongoing PTO reexaminations, regardless of their relevancy to infringement claims which the court must analyze." *Verinata Health v. Ariosa Diagnostics*, No. C 12–05501 SI, 2014 WL 121640, at *5 (N.D. Cal. Jan. 13, 2014).

## B. Motion to Dismiss

Federal Rule of Civil Procedure ("Rule") 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face," allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Under Rule 12, a defendant may move to dismiss a pleading for "failure to state

4.

1   a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  When ruling on

2   the motion, "a judge must accept as true all of the factual allegations contained in the

3   complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But a court is "not bound to

4   accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at

5   678 (2009).

6          The court generally may not consider materials other than facts alleged in the

7   complaint and documents that are made a part of the complaint. *Anderson v.*

8   *Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).  However, a court may consider materials

9   if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged

10  the existence of the materials in the complaint or the complaint "necessarily relies" on

11  the materials. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).

12  The court may also take judicial notice of undisputed facts that are contained in

13  extrinsic materials. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir.

14  1988); *Lee*, 250 F.3d at 689-90.

15

16  **IV.    DISCUSSION**

17          **A. Tarzana's Motion to Stay**

18          Based on the totality of the circumstances, but specifically considering the

19  above listed factors, the Court finds that a stay is warranted.

20          **1.  The Stage of Litigation**

21          A court's analysis of the stage of litigation focuses on "whether discovery is

22  completed, and whether a trial date has been set." *Guthy–Renker Fitness*, 1998 WL

23  670240, at *2.  "A stay is particularly appropriate for cases in the initial stages of

24  litigation or in which there has been little discovery." *Ho Keung Tse v. Apple Inc.*,

25  No. C 06–06573 SBA, 2007 WL 2904279, at *5 (N.D. Cal. Oct. 4, 2007).  As to

26  discovery, the more relevant question is "whether discovery is nearing completion" as

27  opposed to what has already occurred. *Sorensen v. Black & Decker Corp.*, No.

28

06cv1572 BTM (CAB), 2007 WL 2696590, at *4 (S.D. Cal. Sept. 10, 2007).  "In other words, if a significant amount of discovery remains, a stay is more appropriate." *Blast Motion, Inc. v. Zepp Labs, Inc.*, No. 15-CV-700 JLS (NLS), 2016 WL 5107678, at *2 (S.D. Cal. Mar. 29, 2016).

Here, Tarzana argues a stay is appropriate because very little discovery has occurred.  (Mot. to Stay at 17-18.)  When the instant Motion was filed, the parties had served discovery requests but had not filed responses.  (Mot. to Stay at 17; *see also* Dkt. No. 74, SCA's Opposition to Tarzana's Motion to Stay ("SCA Opp'n"), at 7.) SCA argues "discovery is well underway" because Tarzana has served one set of interrogatories, one set of requests for admission, and two sets of requests for production, and SCA has served one set of interrogatories and one set of requests for admission.  (SCA Opp'n at 7.)  SCA also notes that Tarzana's responses were due March 10, 2017.  (*See* Declaration of Kevin W. Kirsch in Support of SCA's Opposition ("Kirsch Decl.") ¶ 6.)

However, in its Motion for Leave to File Supplemental Brief in Support of its Motion to Stay, (Dkt. No. 85), Tarzana alleges, as of April 20, 2017, SCA had "not produced a single document relating to conception and reduction to practice of the Asserted Claims" or "any information about prior art beyond that cited on the face of the [761 and 372] Patents."  (Dkt. No. 85 at 1.)  Tarzana argues that SCA's discovery responses were due April 7, 2017, and all that was produced were forty-three "publicly available documents" relating to the 761 and 372 patents.  (*Id.*)

Although the Court is unsure of the exact extent of discovery that has occurred since late April of this year, it finds this factor weighs in favor of a stay.  The parties minimal production of discovery, and SCA's failure to timely notify Tarzana of a serious impediment to its access to certain documents[2], undermines SCA's claims that

---

[2] When prompted about these deficiencies, SCA allegedly claimed "it had encountered 'a major issue with Swedish data privacy laws and [was] receiving approval from a

1    discovery is well underway.  Moreover, based on the parties Joint Request for Revised

2    Case Schedule, which this Court denied in favor of setting a scheduling conference

3    following the hearings on the instant Motions, (*see* Dkt. Nos. 118, 122), the parties

4    have yet to file their claim construction briefs, and the original date set for hearing on

5    claim construction is still a month away, (Dkt. No. 118 at 12, 13).  Further, pursuant

6    to the Court's order, all case management deadlines have been vacated.  (Dkt. No.

7    122.)

8         Although both parties have likely already spent significant time on their claim

9    construction briefs, "further resources are yet to be expended by the parties and the

10   Court in preparing for and conducting the hearing."  *Blast Motion, Inc. v. Zepp Labs,*

11   *Inc.*, No. 15-CV-700 JLS (NLS), 2016 WL 5107678, at * 3 (S.D. Cal. Mar. 29, 2016);

12   *See TAS Energy, Inc. v. San Diego Gas & Elec. Co.*, No. 12CV2777-GPC BGS, 2014

13   WL 794215, at *3 (S.D. Cal. Feb. 26, 2014) (granting stay pending IPR although "the

14   case is not in its early stages," parties are "is in the midst of discovery," and claim

15   construction briefs were filed, because a "significant amount of work still remains

16   such as expert discovery, summary judgment motions and trial"); *Microsoft Corp. v.*

17   *Tivo Inc.*, 2011 WL 1748428, at *6 (N.D. Cal. May 6, 2011) (finding this factor

18   weighed in favor of a stay despite parties efforts in preparing for claim construction

19   because "neither the tutorial nor the claim construction hearing has occurred").

20        Accordingly, this factor weighs in favor of a stay.

21              **2.  Simplification of Issues**

22        With regards to IPR, "[s]ome of the advantages of a stay include the fact that

23   the record of the reexamination may be entered at trial[;] that the PTO's expertise will

24   govern[,] thus simplifying the case; that evidentiary and other issues will be further

25   narrowed following a reexamination; and that costs will be reduced."  *Spellbound*

26   *Dev. Grp., Inc. v. Pac. Handy Cutter, Inc.*, No. SACV 09-951 DOC (Anx), 2011 WL

27

28   privacy officer to access SCA's data.'"  (Dkt. No. 85 at 2.)

1810961, at * 2 (C.D. Cal. May 12, 2011).  The possibility of simplification "is particularly true where . . . a party has requested reexamination of each of the patents-in-suit."  *See, e.g.*, *Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. SACV12-21-JST (JPRx), 2012 WL 7170593, at *2 (C.D. Cal. Dec. 19, 2012).  However, a stay is unwarranted if IPR "will eliminate only one issue out of many." *IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030, 1032 (C.D. Cal. 2005).

Tarzana argues IPR review will simplify the case because if the Patent Office cancels the asserted claims, the following "claims and counterclaims will be mooted: (1) both of SCA's claims of patent infringement (the *only* claims asserted by SCA); (2) Tarzana's four counterclaims for inequitable conduct and its counterclaim for correction of inventorship; and, (3) all seventeen affirmative defenses asserted by Tarzana."  (Dkt. No. 48, Tarzana's Reply in Support of its Motion to Stay ("Tarzana Reply"), at 11.)  Further, if any claims survive IPR, Tarzana explains that the IPR estoppel provisions will limit it from arguing invalidity on any of the grounds considered by the Patent Office in its final written decision.  (Mot. to Stay at 20; SCA Opp'n at 13.)

SCA argues it is speculative to assume the Patent Office will institute proceedings or cancel any claims.  (*See* SCA Opp'n at 19-21.)  However, SCA acknowledges that the case would be resolved if Tarzana succeeds in invalidating "each and every asserted claim at the [Patent Trial Appeal Board] and that decision [i]s upheld on review."  (*Id.* at 13 n.3.)

Even if the outcome of the IPR does not completely resolve the case, the Court finds that it will simplify this case.  Here, Tarzana has petitioned for review over all the asserted claims of the patents in suit.  (*See* Dkt. Nos. 120, 121.)  Thus, IPR review could potentially moot both of SCA's claims and five of Tarzana's counterclaims, leaving only one claim to be decided by this Court.  (*See* Tarzana Reply at 11).  Moreover, even if all of the asserted claims survive review, the case would still be

simplified because Tarzana would be limited in which arguments it could raise before this Court. *See* 35 U.S.C. § 315(e). (*See also* Mot. to Stay at 20; Opp'n at 13-14.) Even still, the Court believes it will benefit from the expert evaluation of the issues by the Patent Office. *See Sorensen*, 2007 WL 2696590, at * 5; *Ho Keung Tse*, 2007 WL 2904279, at *3 ("Waiting for the outcome of the reexamination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate the trial by providing the Court with the opinion of the PTO and clarifying the scope of the claims.")

Therefore, this factor also weighs in favor of a stay.

### 3. Undue Prejudice

Lastly, the Court analyzes "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Guthy–Renker Fitness*, 1998 WL 670240, at *2. "The delay inherent to the reexamination process does not constitute, by itself, undue prejudice." *Photoflex Prods., Inc. v. Circa 3 LLC*, No. C 04–03715 JSW, 2006 WL 1440363, at *2 (N.D. Cal. May 24, 2006). In analyzing this factor, courts have looked to considerations such as the timing of the requests for reexamination and a stay, the status of the reexamination proceedings, and the relationship of the parties. *Telesign Corp. v. Twilio, Inc.*, No. CV 15-3240 PSG (SSx), 2016 WL 6821111, at *4 (C.D. Cal. Mar. 9, 2016).

Tarzana argues SCA will not be prejudiced by a stay because "it waited three years to sue Tarzana on the '761 patent even though it knew of the accused napkins as they had already been cleared by SCA in the 2012 Settlement Agreement." (Mot. to Stay at 21-22.) SCA claims it will suffer prejudice if a stay is granted because Tarzana is its direct competitor and a stay will only work to give Tarzana "time to continue to infringe SCA's patents." (SCA Opp'n at 15-16.)

The Court is not convinced that the delay in filing the IPR petition was the result of Tarzana seeking a tactical advantage. From its Motion and accompanying

declarations, it is clear Tarzana did not believe it had enough resources to continue defending this case *and* file petitions for IPR.  (*See* Mot. at 1; Pearson Decl. ¶¶ 10-12.)  The fact that the petitions were ultimately filed in conjunction with another party against whom SCA asserts similar claims does not undermine Tarzana's decision not to file earlier; in fact, it lends credence to their contention that they were not in a position to file IPR petitions absent a stay.  (*See* Dkt. No. 118 at 6 (noting the other party is paying for the IPR petitions).)

Further, Tarzana's OneNap was the subject of prior litigation between the parties, demonstrating SCA's awareness of it and its similarities to SCA's products.  (*See* Dkt. No. 23-5 ¶ 1, 4).  SCA waited until November 2016 to file suit against Tarzana for this alleged infringement, despite that the 761 patent was issued in December 2013, and that OneNap had been on the market since 2010.  (*See* Counterclaims ¶¶ 18, 52.)  Seeing as how SCA delayed in bringing this action in the first place, its arguments of prejudice are unpersuasive.  *See Ignite USA, LLC v. Pac. Market Int., LLC*, 2014 Wl 2505166, at *3 (N.D. Ill. May 29, 2014) (no undue prejudice where plaintiff waited two years to file complaint after learning of accused product); *see also Sorensen*, 2007 WL 2696590, at *4 (lack of undue prejudice even where patent was set to expire, because plaintiff "could have prevented this situation by filing suit many years ago").  Moreover, SCA contends it is speculative to say SCA will not lose market share as a result of a stay.  (SCA Opp'n at 17.)  However, SCA does not affirmatively claim its market share will be affected, and Tarzana presents evidence that there are multiple competitors in this industry, limiting the danger of a loss of market share.  *See Prime Focus Creative Servs. Canada Inc. v. Legend3D, Inc.*, No. CV-15-2340-MWF (PLA), 2015 WL 12746207, at *1 (C.D. Cal. Sept. 23, 2015) ("While the Court understands that the parties here are direct competitors, which strongly argues against a stay, nonetheless under the case law and in the Court's discretion, a partial stay is warranted.  Consistent with the Federal Circuit's decision in

10.

1  *VirtualAgility*, the Court is unconvinced that legal damages are insufficient to
2  compensate Plaintiff, especially in view of the existence of multiple  competitors in
3  the market."); *Nest Oil Oyj v. Dynamic Fuels, LLC*, No. 12–662–GMS, 2013 WL
4  424754, at *3 (D. Del. Jan. 31, 2013) ("There may be less cause for concern . . . when
5  there are a number of active firms in the relevant market.").

6        Accordingly, this factor also weighs in favor of a stay.

7            **4. Conclusion**

8        For the foregoing reasons, the Court **GRANTS** Tarzana's Motion to Stay.  The
9  Case is hereby **STAYED** pending the Patent Office's decision of whether to institute
10  proceedings based on Tarzana's IPR applications.  Should the Patent Office institute
11  proceedings, the stay will continue pending final decision by the Patent Office.

12
13  **B. SCA's Motion to Dismiss Tarzana's Counterclaim for Conspiracy to**
14  **Defraud**

15        SCA argues Tarzana's counterclaim for conspiracy to defraud should be
16  dismissed for three reasons: (1) it is barred by the 2012 Agreement; (2) it is barred by
17  the economic loss doctrine; and, (3) it fails to plead fraud with particularity as
18  required by Rule 9(b).  (Dkt. No. 34 ("SCA Motion to Dismiss") at 10-14.)  The Court
19  addresses each argument in turn.

20        **1. Tarzana's Counterclaim for Conspiracy to Defraud Is Not Barred**
21        **By the 2012 Agreement**

22        SCA argues Tarzana cannot plausibly prevail on this counterclaim based
23  paragraph 7.2.5 of the 2012 Agreement, which states that Tarzana "has fully
24  investigated, to its full satisfaction, all facts surrounding the various claims,
25  controversies and disputes among them, and is fully satisfied with the terms and
26  effects of this Agreement."  (Dkt. 23-5 at ¶ 7.2.4; *see also* SCA Mot. to Dismiss at 10-
27  11.)  The agreement also states "[n]o promise, representation, or inducement has been
28  offered or made except as herein set forth, and that this Agreement is executed

without reliance upon any statement or representation by any Party or its employees, partners, officers, affiliates, agents or attorneys." (Dkt. No. 23-5 ¶ 7.2.5.) SCA further affirmatively asserts that it "made no representation with regard to the existence of patent applications covering similar subject matter." (*Id.*)

California courts have held "evidence of fraudulent representations inducing the execution of a contract is admissible as an exception to the parole evidence rule." *Buist v. C. Dudley De Velbiss Corp.*, 182 Cal. App. 2d 325, 331 (Ct. App. 1960) *; see also Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169, 1183 (2013) (overruling *Bank of Am. Nat. Trust & Savings Ass'n v. Pendergrass* "and its progeny, and reaffirm[ing] the venerable maxim stated in [*Ferguson v. Koch*, 204 Cal. 342, 347 (1928)]: "[I]t was never intended that the parol evidence rule should be used as a shield to prevent the proof of fraud."); *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp.*, 32 Cal. App. 4th 985, 992-94 (1995) (summarizing cases holding that contract provisions stating all representations are contained therein do not bar actions for fraud). Further, when there is a duty to disclose, the non-disclosing party cannot escape liability by relying on a contract provision limiting the parties' representations to those stated in the contract. *Ron Greenspan Volkswagen, Inc.*, 32 Cal. App. 4th at 993.

Accordingly, Tarzana's claim alleging fraud by omission based on a duty to disclose, is not barred by the 2012 Agreement's integration or reliance clauses.

## 2. Tarzana's Counterclaim Is Not Barred By the Economic Loss Doctrine

SCA contends "Tarzana should be barred from pursing tort recovery under its conspiracy to defraud claim for alleged losses associated with the parties' Settlement Agreement." (SCA Mot. to Dismiss at 12.) SCA alleges Tarzana had "ample opportunity to address the scope of the agreement" and "failed to address these concerns." (*Id.* at 13.)

The California Supreme Court has repeatedly affirmed that the economic loss doctrine is not a bar to properly pled claims for fraudulent inducement. *See Lazar v. Super. Ct.*, 12 Cal. 4th 631, 645 (1996) ("[F]raudulent inducement of contract—as the very phrase suggests—is not a context where the 'traditional separation of tort and contract law' obtains."); *see also Erlich v. Menezes*, 21 Cal. 4th 543, 551-52 (1999) ("Tort damages have been permitted in contract cases . . . where the contract was fraudulently induced."); *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 989-90 (2004) (quoting *Erlich* for the proposition that a claim for fraudulent inducement is not barred by the economic loss doctrine). Accordingly, courts in the Central District have affirmed this principle. *See, e.g., United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1188 (C.D. Cal. 2009) ("The economic loss rule poses no barrier to a properly pled fraudulent inducement claim[.]").

Here, the crux of Tarzana's claim is that SCA failed to disclose material information in order to induce Tarzana into entering the 2012 Agreement. Because the Court finds Tarzana has adequately pleaded this claim, *see* analysis below, the economic loss doctrine does not bar the claim.

### 3. Tarzana's Counterclaim Is Properly Pleaded

Under California law, to plead fraud or deceit based on an omission, the plaintiff must allege that: (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would have acted differently if she had known of the concealed or suppressed fact; and, (5) the plaintiff sustained damage as a result of the concealment or suppression. *Ralston v. Mortg. Investors Grp., Inc.*, No. CV 08-536 JF PVT, 2010 WL 3211931, at *3 (N.D. Cal. Aug. 12, 2010) (citing *Hahn v. Mirda*, 147 Cal. App. 4th 740, 748 (2007)).

13.

Further, "[t]o state a cause of action for conspiracy, the complaint must allege (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts." *Younan v. Equifax Inc.*, 111 Cal. App. 3d 498, 511, n.9 (1980).

Tarzana has sufficiently pleaded fraud based on omission of material fact. As to the first element, Tarzana alleges that SCA never disclosed the existence of the 761 patent application and that the application should have been included in SCA's responses to Tarzana's discovery requests during the prior litigation. (*See* Counterclaims ¶ 57 n.2 (requesting, for example, "documents that refer or relate to the patents-in-suit" and "documents, including patent applications, that refer or relate to the patents-in-suit" which would have included the 761 patent application because it includes multiple references to the 765 patent).) Further, as to the second element, Tarzana claims SCA was under a duty to disclose the existence of the 761 patent application based on the abovementioned discovery requests. (*Id.* ¶ 89.)

As to element three, Tarzana claims SCA could have disclosed the existence of the application and chose not to because the patent application was filed months before SCA originally sued Tarzana on the 765 and 159 patents. (*See Id.* ¶¶ 22, 38.) Moreover, Tarzana avers SCA's intent is apparent when its position in connection with the prior litigation concerning the 765 and 159 patents is compared to its position concerning the 761 patent application. Tarzana alleges that, during the prior litigation, SCA argued its 765 and 159 patents covered napkins where the first fold is offset to a certain degree, also claimed (1) it produce napkins where the first fold is offset, (2) making the fold perfectly equal would be "practically impossible," and (3) the difference between a napkin with an offset and one without "would be insubstantial." (*Id.* ¶ 32, 34.) Moreover, Tarzana alleges that during the prior litigation SCA would not admit that an offset of up to one inch did not infringe the 765 and 159 patents. (*Id.*

1   ¶ 36.)  Despite this, Tarzana claims SCA later agreed Tarzana could continue making
2   its OneNap product with an offset of one-half inch.  (Dkt. No. 23-5 ¶¶ 2.1, 2.2.)

3         Tarzana then notes that, all the while, the 761 patent application was pending.
4   Tarzana next contends that, in support of the application, SCA argued that the 765 and
5   159 patents concerned an equal first fold *as opposed to* an offset first fold.  (*Id.* at
6   ¶¶ 43-51.)  Tarzana claims this directly contradicts SCA's arguments in the prior
7   litigation: if the 765 and 159 patents cover a degree of offset, and the 761 patent
8   propose to cover offset folds, there is a clear overlap between what the patents claim
9   to cover.  Tarzana concludes, given that SCA purportedly gave Tarzana the right to
10  produce a napkin with a one-half inch offset in the 2012 Agreement, all the while
11  knowing it was pursuing a patent that would cover this degree of offset, it is possible
12  that the failure to produce evidence of the 761 patent application was intentional and
13  done with the purpose of misleading Tarzana.

14        As to element four, Tarzana claims it did not and could not have known of the
15  patent application before it entered into the 2012 Agreement because the application
16  was not published until May 3, 2012.  (*Id.* at ¶ 60.)  Moreover, Tarzana avers it would
17  not have entered into the 2012 Agreement had it known of the application.  (*Id.* ¶ 68.)
18  Tarzana explains that the terms of the 2012 Agreement allow Tarzana to make
19  napkins with a one-half inch offset; however, SCA now claims that *same* product
20  infringes its new patents, which were granted after execution of the 2012 Agreement.
21  Lastly, Tarzana contends it sustained damages as a result of the alleged concealment
22  because it paid SCA $75,000 based on the 2012 Agreement and is facing litigation
23  costs again as a result of the concealment.  (*See* Counterclaims ¶ 70, 96; Dkt. 23-5 ¶
24  4.1.)  Based on the foregoing discussion, the Court finds Tarzana has sufficiently
25  pleaded its cause of action for fraud.
26        With respect to conspiracy, Tarzana alleges Defendants SCA Tissue and SCA
27  Hygiene, along with their officers and counsel, "knowingly worked in concert to
28

15.

withhold documents and information relating to the '761 Offset Patent application from Tarzana during the 2011 litigation." (*Id.* ¶¶ 96; *see also* ¶ 58.)  Tarzana claims SCA Hygiene obtained rights to the 761 patent application on September 7, 2011, from SCA Tissue, and that he same attorney was counsel of record for the 765, 159 and 761 patents.  (Compl. ¶¶ 14-15; Counterclaims ¶ 55.)  Tarzana argues that this, along with the above explanation of the different arguments advanced by SCA during the earlier litigation and in support of the patent application, are sufficient allegations of formation and operation of the conspiracy.  The wrongful act alleged, as stated previously, is that SCA allegedly failed to disclose the existence of the 761 patent application inducing Tarzana to enter into the 2012 Agreement.  The alleged harm resulting from these acts is Tarzana's payment under the 2012 Agreement and apparent continuing liability despite the terms of the agreement.  (*See* Counterclaims ¶¶ 70, 96; Dkt. 23-5 ¶ 4.1.)  Accordingly, the Court finds Tarzana has properly pleaded conspiracy.

### 4.  Conclusion

Based on the reasoning above, the Court **DENIES** SCA's Motion to Dismiss Tarzana's Counterclaim for Conspiracy to Defraud.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Tarzana's Motion to Stay and **DENIES** SCA's Motion to Dismiss.  This case is hereby **STAYED** pending a decision by the Patent Office on whether to institute proceedings based on Tarzana's application.

In order to permit the Court to monitor this action, the Court **ORDERS** the parties  to file periodic status reports.

The first such report is to be filed on **December 18, 2017,** unless the Patent Office makes a decision of whether or not to institute proceedings sooner.  Successive

reports shall be filed every 60 days thereafter.  Each report must indicate on the face page the date on which the next report is due.

All pending calendar dates are hereby vacated by the Court.

This Court retains jurisdiction over this action and this Order shall not prejudice any party to this action.

**IT IS SO ORDERED.**

Dated:  September 27, 2017  _____

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

17.